**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

KAITLYN ROONEY, RUPJOT NAGRA,
and TEONA MIRCESKA,

                    Plaintiffs,

    v.

AURORA POLICE DEPARTMENT,

                    Defendant.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiffs Kaitlyn Rooney, Rupjot Nagra, and Teona Mirceska, by and through legal counsel, CONDUIT LAW, LLC, for their Complaint against Defendant Aurora Police Department assert as follows:

### I.      NATURE OF THE CASE

1.    This is an employment discrimination and retaliation suit brought by three former members of Defendant Aurora Police Department's Explorer Post 2024 ("the Post"). Plaintiffs began as Explorers in their teenage years before being constructively discharged on or about July 12, 2022. Plaintiffs, all members of a protected class based on their sex (female), were all subject to severe sexual harassment by both other male Explorers as well Plaintiffs' adult, male supervisors, all in violation of state and federal law. Plaintiffs repeatedly complained about the inappropriate sexual harassment and discrimination they and other women experienced to numerous male and female supervisors at the Post, all to no avail. After raising their complaints, Plaintiffs were retaliated against by Defendant, which used a minor incident as pretextual grounds

to terminate all three Plaintiffs while not even disciplining any male Explorers who were also involved in the incident, including those who followed a private, non-public Instagram page but failed to report it.

2.      Plaintiffs assert claims of discrimination, sexual harassment, hostile work environment, and retaliation following their complaints about sexual harassment and discrimination on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq*. ("Title VII").

3.      Plaintiffs further assert claims of discrimination, sexual harassment,  hostile work environment, and retaliation following their complaints about harassment on the basis of their gender under the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, et seq. ("CADA").

## II.  PARTIES

4.      Plaintiff Kaitlyn Rooney ("Plaintiff Rooney") is a resident of Colorado and a member of a protected class of individuals recognized under 42 U.S.C. § 2000e-2(a)(1), which prohibits gender discrimination, *inter alia*.

5.      Plaintiff Rupjot Nagra ("Plaintiff Nagra") is a resident of Colorado and a member of a protected class of individuals recognized under 42 U.S.C. § 2000e-2(a)(1), which prohibits gender discrimination, *inter alia*.

6.      Plaintiff Teona Mirceska ("Plaintiff Mirceska") is a resident of Colorado and a member of a protected class of individuals recognized under 42 U.S.C. § 2000e-2(a)(1), which prohibits gender discrimination, *inter alia*.

7.      Defendant Aurora Police Department ("Defendant") is a municipal law enforcement agency headquartered in Aurora, Colorado.  Defendant is domiciled in Colorado and maintains headquarters and a principal place of business at 15001 E. Alameda Parkway, Aurora, CO 80012.   Plaintiffs completed most of their employment activities at 13348 E. Montview Boulevard, Aurora, CO 80045.

### III.  JURISDICTION AND VENUE

8.     Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

9.     Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*. and the Colorado Anti-Discrimination Act, as amended, C.R.S. § 24-34-402, *et seq*. ("CADA").

10.     This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

11.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as Plaintiff's Title VII claims.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

13.     At all relevant times, Plaintiffs were "employees," as set forth in 42 U.S.C. § 2000e(b) of Title VII and in Colo. Rev. Stat. § 24-34-401(2) of the CADA.  Although Defendants did not pay Plaintiffs, Plaintiffs satisfy every single other element of the definition of an "employee." *EEOC Threshold Issues Guidance*, at 2-III.A.  Plaintiffs, for example, received non-monetary compensation including preference points for a future application to the APD. Additionally, (1) Defendant extensively controlled when, where, and how Plaintiffs performed their work; (2) Plaintiffs received extensive training and became highly skilled at performing their work; (3) other than field exercises and public outings, and public and other events at which Explorers were required to work, all work was performed at Defendant's premises or in property such as Defendant's vehicles when Plaintiffs participated in "ride-alongs"; (4) Plaintiffs and Defendant maintained a professional relationship over the course of many years and Plaintiffs were subject to the traditional "chains of command," received Defendant Explorer Post 2024 email addresseses, engaged with traditional Aurora Police Department Human Resources, and have hundreds of pages of documents indicating the hours during which they performed work for

Defendant; (5) Defendant provided all tools, materials, and equipment related to the work including uniforms, police equipment, and firearms (other than boots, a duty belt, and a flashlight); Plaintiffs, for example, used "blue guns" during training as well as APD firearms during range training, both of which were issued by Defendant; (6) Defendant maintained extensive authority to assign additional work, projects, and engagements to Plaintiffs and issued Plaintiffs key cards which provided them some access to secured, non-public areas; (7) Defendant exclusively set the hours of Plaintiffs' work schedules and Plaintiffs had no discretion about the hours when they could perform their work and also conducted thorough criminal background checks on each Plaintiff; (8) Plaintiffs, when promoted, eventually had other Explorers "under" their chains of command; (9) Plaintiffs clearly engaged in Defendant's regular course of business including "ride-alongs," APD DUI checkpoints, and public-facing events; (10) Defendant was "engaged in business" for the entirety of Plaintiffs' tenure and continues to be; (11) Plaintiffs did not perform their work through their own entity such as an LLC; (12) Plaintiffs were provided certain benefits by Defendant, such as mental health benefits; (13) Defendant clearly maintained authority to terminate, discipline, and promote each Plaintiff; and (14) both Plaintiffs and Defendant subjectively believed, based upon all of the above, that a traditional employee-employer relationship existed. *See also Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992).

14.    Additionally, 42 U.S.C. § 2000e-2(d) holds that "[a]n applicant to, or a participant in, a training or apprenticeship program is protected against discrimination with respect to admission to, or participation in, the training or apprenticeship program, regardless of whether the individual is an 'employee.'" As Explorers at the Post, Plaintiffs were apprenticing to become law enforcement officers and, in fact, would have earned "preference points" for a future application to the Aurora Police Department upon successful completion and graduation from the Post. *See also* C.R.S. § 24-34-402 (providing CADA protections to apprentices such as Plaintiffs).

15.    Plaintiffs collectively worked thousands of hours as a statutory employee of the Post. Plaintiff Rooney worked at least 2000 hours for Defendant and Plaintiffs Mirceska and Nagra

worked at least 1000 hours for Defendant.  These documented hours do not include countless hours spent maintaining Post 2024-issued uniforms and boots, studying law enforcement criminal codes, police radio etiquette, the law enforcement phonetic alphabet and radio call codes, studying for exams, keeping their bodies fit to perform Explorer-related duties, maintaining off-duty communications with Explorer colleagues and advisors, and other off-duty time requirements imposed on Explorers.  Additionally, the Post required Explorers to participate in mandatory events and events that were often short-staffed.

16.     At all relevant times, Defendant was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(f) of Title VII and in C.R.S. § 24-34-401(3) of CADA.

### IV.  ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

17.     Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

18.     Prior to filing this action, Plaintiff Rooney, Plaintiff Nagra, and Plaintiff Mirceska dually filed their Charges of Discrimination, Charge Nos. 32A-2023-00203, 32A-2023-00228, and 32A-2023-00191, respectively, with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), Complaint Nos. E2300017576,  E2300018201, and E2300018096, respectively, for gender discrimination, retaliation, and other claims.

19.     On or about July 26, 2023, the CCRD issued Notices of Right to Sue on behalf of each Plaintiff.   Defendant also received a copy of each Notice of Right to Sue on or about July 26, 2023.

20.     This action is timely filed because it is filed within ninety (90) days of each Plaintiff's Notice of Right to Sue issued by the CCRD.

21.     Plaintiffs have met all administrative prerequisites prior to filing this action.

### V.  FACTUAL ALLEGATIONS

*Common Allegations Regarding the Relevant Adverse Employment Actions*

22.     As a result of engaging in private text message conversations and being associated with a private, non-public Instagram page on which a party who is not a party to this lawsuit posted content from the private text message conversations, all three Plaintiffs were initially suspended from the Post in July 2019.

23.     Plaintiffs were initially dismissed from the post in November 2019.

24.     However, despite lengthy delays in the initial and subsequent investigations, Plaintiffs all timely appealed their dismissals and engaged with increasingly higher ranks at Defendant, up to and including *two* former Chiefs of Police, before Defendant agreed to reinstate all three Plaintiffs.

25.     At the last minute, despite advising Plaintiffs that they would be reinstated, in July 2022, Defendant unilaterally amended each Plaintiff's reinstatement to, instead, reinstatement with the requirement that each Plaintiff immediately resign.

26.     Accordingly, on or about July 12, 2022, as a result of each Plaintiff being "ceremonially reinstated" but then immediately forced to resign, each Plaintiff was constructively discharged.

*Plaintiff Rooney*

27.     Prior to her July 12, 2022 constructive discharge Plaintiff Rooney was one of the most highly-decorated and frequently-promoted members of the Post.

28.     Perhaps more important than her accolades is the role – which she took upon herself as young teenager – to use her position to call out the pervasive and frequent sexual harassment which occurred at the Post.

29.     Indeed, Plaintiff Rooney frequently engaged in protected activity when she raised increasingly vocal concerns about such sexual discrimination, such as in an October 29, 2018 Memo of Concern which she sent to all Command Staff and Advisors:

The things I along with most explorers have noticed include . . . **Treatment towards female explorers in the sense of rude comments about relationships that again are completely based on personal opinion and rumors and in insinuating relationships on many occasions against myself and other female explorers by both [adult Command] staff AND [adult] Advisors. It is disgusting that grown men and women in these positions of trust with the explorer program would go as far as to insinuate that they KNOW sexual relations have happened between explorers or even worse between explorers and officers**. When in fact the same things certain female explorers have done or received have been done also by male explorers with no consequences or investigations. For example, a female explorer is criticized for riding with the same male officer often but yet when male explorers ride with the same female officer EVERY week it is no issue. **Also, if a female explorer receives something from a male officer it is "unprofessional" and grounds for an investigation. Yet when male explorers receive items (training gun holster, handcuffs, knifes) from an officer it is no issue.**

(Emphases added.).

30.    Defendant's utter failure to address these concerns did not, however, dissuade Plaintiff Rooney from voicing them, and she continued doing so in in-person meetings with her male, adult supervisors, including in a meeting on February 12, 2019.

31.    Plaintiff Rooney even was brave enough to report two adult supervisors in June 20, 2019 written feedback.

**a.    A Male Explorer Sexually Harasses Plaintiff Rooney**

32.    Plaintiff Rooney was the victim of pervasive sexual harassment.

33.    Explorer Post 2024 contains numerous Standard Operating Procedures both implicitly and explicitly prohibiting sexual harassment:

SOP 9.6    No Explorer will act or behave in such a manner that brings discredit upon themself, the post, or the police department.
SOP 9.26    **The Aurora Police Explorer Post 2024 will not tolerate incidents or circumstances of discrimination, harassment nor sexual harassment.** Harassment is conduct that involved an atmosphere of unwelcome working conditions that have the purpose or effect of unreasonable interfering with an individual's work performance or
creating an intimidating, hostile, or offensive work environment. Federal and state laws prohibit harassment based on age, race, disability, color, ethnic origin, religion or sexual orientation.

SOP 9.27      All incidents of discrimination, harassment and sexual harassment must be reported to the Post Advisor immediately. **Any Explorer perpetrating this type of conduct will be subject to dismissal from the post.**

(Emphases added.).

34.    Despite this crystal-clear guidance, in November 2018, a male Explorer, A.B., repeatedly and pervasively sexually harassed Plaintiff Rooney.

35.    A.B. was never suspended, demoted, dismissed, or in any way otherwise disciplined.

36.    Messages from A.B., who was in a *supervisory position* over Plaintiff Rooney, an underage female included:



37.    When his advances – which were, to be perfectly clear, unwelcome and not consented to – were rebuffed, A.B. used his power to punish Plaintiff Rooney:



38.    A.B.'s discipline of Plaintiff Rooney was not made pursuant to any of Defendant's

Standard Operating Procedures.

39.    Not only had Plaintiff Rooney done absolutely nothing to deserve this retaliation

(she was incorrectly accused of violating a non-existent SOP after not turning in her uniform for a

three-week leave of absence when, in fact, the applicable SOP unequivocally states that uniforms

must only be turned in for "a leave of absence for more than four weeks"), "being disrespectful"

and "giving attitude" are not grounds to administer discipline, especially on the heels of the above-

described sexual harassment.

40.    The discipline, therefore, was clearly in retaliation for Plaintiff Rooney rebuffing

A.B.'s obviously sexual advances.

41. Prior to meting out discipline, A.B. placed a telephone call to Plaintiff Rooney in which he screamed at her to inform her that discipline was forthcoming.

42. Plaintiff Rooney alerted her supervisors to A.B.'s unwelcomed, provocative texts and other sexual harassment.

43. Nevertheless, A.B. never received any discipline – not even a "Verbal Reprimand," much less a more sanction, up to and including "Dismissal" – as the Standard Operating Procedures authorize.

44. In fact, A.B.'s retaliatory behavior continued and, on January 26, 2019, Plaintiff Rooney received a Performance Appraisal Entry (PAE) *from her sexual harasser*, A.B., because she "showed up to academy wearing jeans with holes."

45. Not only is the fact that A.B. was allowed to remain in a supervisory position over Plaintiff Rooney during and after sexually harassing her *per se* discriminatory, but equally as important is that no male was ever punished for wearing "jeans with holes" despite male Explorers being depicted doing so in publicly available photographs.

**b.    Adult, Male Supervisors Exacerbate and Increase the Sexual Harassment**

46. Plaintiff Rooney and Plaintiff Rooney's mother reported A.B.'s sexual harassment to her supervisors, Officer Smick and Officer Singleton, later reporting the same behavior to Defendant's human resources representative, Ryan Lantz, and Post Lieutenant Jackson.

47. Instead of disciplining A.B. or at least supporting her throughout this process, these adult, male supervisors took every opportunity to humiliate Plaintiff Rooney instead, using wildly inappropriate language in a conversation with an underage, teenage female.

48. Officers Smick and Singleton used patently discriminatory and shocking language regarding Plaintiff Rooney in a February 12, 2019 meeting they had with her and her mother, which she recorded:

**11:15:** "**[I]f you wanna doll yourself up, we don't have a problem with that,** everybody does it when we go out when we have parties and stuff like that, **but it's kind of a classy dolling up**, you know, nobody comes out and wears too short of shorts, or, too tight of stuff, or, you know, other revealing type of stuff, that's what we're trying to impress upon **you guys**, Explorers in the Post. To keep it classy. **Look good** but keep it classy."

**17:16:** "[I]t sounds really, in the grand scheme of things. Now, if you continue to repeat the process over and over, or maybe you know, **you decided that you were a Victoria's Secret fashion model** and wore something like that in an inappropriate manner, then that would be something a little bit different."

49.     Again, these were Plaintiff Rooney's male, adult supervisors implying that she should "doll her[self] up" in a "classy" way and that she might want to be a "Victoria's Secret fashion model."

50.     Despite all this, Plaintiff Rooney did not back down and continued raising legitimate concerns of sexual harassment and discrimination, including at the hands of her adult, male supervisors, including on February 21, 2019 and July 18, 2019.

51.     It was only after engaging in such protected activity that, in July 2019, Defendant used a private text message conversation and a non-plaintiff's private, non-public Instagram page as pretextual grounds to terminate Plaintiff Rooney.

**c.    Plaintiff Rooney Endures Corporal, Discriminatory Punishment**

52.     In the midst of being subjected to verbal sexual harassment from her superiors and retaliatory, disciplinary conduct, on January 19, 2019, Plaintiff Rooney was forced to endure 10 minutes of corporal punishment.

53.     While on a free day during a police apprenticeship competition in Chandler, Arizona, Plaintiff Rooney again reported to Defendant's discriminatory practices to a superior, Officer Natasha Muturi, including that female Explorers received disparate treatment when compared to their male counterparts.

54.     In retaliation for engaging in this protected activity, Officer Muturi forced Plaintiff Rooney and another female Explorer, Plaintiff Nagra, to engage in nearly ten minutes of non-stop exercises in a hot hotel parking lot.

55.     During the punishment, Officer Muturi repeatedly made references to Plaintiff Rooney's and Plaintiff Nagra's buttocks as captured in recorded audio of the interaction:

> **4:03:** Officer Muturi:  Alright stop, stay in plank, get your butt down, butt down Nagra, Why are we out here?
> Plaintiff Rooney: I don't know, ma'am.
> **4:23:** Officer Muturi: get your butt down Rooney, this is your actual rest, cause we're not done, this is your resting position.
> (Officer Muturi orders them to remain in a plank position)
> Officer Muturi: You have no idea why we're out here?
> Plaintiff Rooney: No
> **8:42:** Officer Muturi: it's going to be documented as far as, again, today how this is being addressed it's going to be documented - "plank" - get your butt down.

56.     Not only was this corporal punishment not meted out  on any male Explorer during the Chandler trip, but the fact also that it was done on a free day, in a hot, hotel parking in full view of their colleagues and the public lot clearly demonstrates its discriminatory and retaliatory intent.

57.     In sum, the discrimination could not be clearer: Plaintiff Rooney, after being sexually harassed by a repeat offender, subjected to demeaning language by her adult, male supervisors, and subjected to discriminatory corporal punishment, was discharged for allegedly wrongful conduct while her perpetrator, A.B. received no consequences and has the potential to graduate with full preference points to become an Aurora Police Department officer should he choose to do so.

58.     None of Plaintiff Rooney's adult, male supervisors were ever disciplined for both allowing sexual harassment to occur and referring to Plaintiff Rooney in discriminatory and harassing language.

59.    Additionally, Plaintiff Rooney engaged in a wide range of protected activity when she reported, verbally and in writing, sexual harassment and discrimination, in writing, including as a result of the following:

- Plaintiff Rooney's October 25, 2018 memo outlining extensive and severe sexual discrimination and sexual harassment issues at Explorer Post 2024.
- Plaintiff Rooney's October 31, 2018 memo reiterating both Plaintiff Rooney's and others' ongoing concerns regarding severe and pervasive sexual harassment.
- Officer Singleton forbids Plaintiff Rooney from speaking to anyone else about her sexual harassment and discrimination concerns, including the fact that a male Explorer who violated an SOP was allowed to test for and receive a promotion.
- Plaintiff Rooney shares with another superior, Officer Muturi, her concerns about unequal and discriminatory treatment.
- Plaintiff Rooney and her mother, in a February 12, 2019 meeting, express both specific and general concerns of discrimination, only to be confronted with discriminatory comments from Officer Smick himself, which is superior, Officer Singleton, did not respond to or condemn.
- Officer Singleton admits that a male Explorer, A.B., exhibited poor communication and leadership skills, acts for which he was never disciplined, while still maintaining a negative performance document which A.B. put in place regarding Plaintiff Rooney.
- On June 20, 2019, Plaintiff Rooney submits extensive sexual discrimination concerns, in writing, from her own perspective as well as on behalf of other female Explorers.
- Plaintiff Rooney, on behalf of other female Explorers, again raises discrimination complaints, only to be berated by Officer Singleton.

60.    Defendant never addressed any of these concerns and eventually used them as bases to terminate Plaintiff Rooney in July 2022.

*Plaintiff Nagra*

61.    Prior to her discriminatory termination, Plaintiff Nagra was nothing short of one of Explorer Post 2024's most accomplished and decorated officers in training.

**a.    A Male Explorer Sexually Assaults Plaintiff Nagra and Receives Little to No Discipline**

62.    Explorer Post 2024 contains numerous Standard Operating Procedures both implicitly and explicitly prohibiting sexual harassment:

SOP 9.6        No Explorer will act or behave in such a manner that brings discredit upon themself, the post, or the police department.

SOP 9.26      **The Aurora Police Explorer Post 2024 will not tolerate incidents or circumstances of discrimination, harassment nor sexual harassment.** Harassment is conduct that involved an atmosphere of unwelcome working conditions that have the purpose or effect of unreasonable interfering with an individual' s work performance or

creating an intimidating, hostile, or offensive work environment. Federal and state laws prohibit harassment based on age, race, disability, color, ethnic origin, religion or sexual orientation.

SOP 9.27      All incidents of discrimination, harassment and sexual harassment must be reported to the Post Advisor immediately. **Any Explorer perpetrating this type of conduct will be subject to dismissal from the post.**

(Emphases added.).

63.     Despite this crystal-clear guidance, in November 2018, a male Explorer and Sergeant, S.A., sexually assaulted Plaintiff Nagra by using a search exercise as an excuse to touch and grab her breast.

64.     During the incident, which is described in detail by multiple witnesses including, but not limited to, Plaintiff Nagra, S.A. not only sexually assaulted her by touching and grabbing her breast but also inappropriately touched other parts of her body including her upper torso.

65.     As at least one witness statement confirms, this was *not* the first time S.A. had engaged in this behavior, as he "was told previously to not search females above the waistline before the incident occurred with [Plaintiff] Nagra."

66.     The incident involving Plaintiff Nagra was immediately reported to numerous supervising officials including Officer Singleton, Officer Susan Baker, Team Leader Jacob Lempert, Commander Samsone Tefera, and at least two other Sergeants, including Sergeant Omar Alvarez.

67.     Despite the bevy of eyewitness statements *and* confirmation that S.A. was trained on not conducting searches of females such as Plaintiff Nagra "above the waistline" and had received approximately five years of specialized Post training on how to property search females, S.A. was cleared of all wrongdoing and allowed to continue not only working with the Post –

including with other females – but also serve in a leadership position and in a position of power and authority over females.

68.    The physical assault, however, is not the end of this discriminatory incident.

69.    Specifically, although Defendant purported to conduct an investigation, at most a few interviews were completed later in November with absolutely no follow-up in terms of a formal investigation until December 2019, and only then as a result of Plaintiff Rooney's mother requesting and attending a meeting with former Chief of Police Nick Metz, Defendant's in-house attorney, and members of Command Staff.

70.    Defendant further discriminated or interfered with the investigation when their sex crimes investigator told Plaintiff Nagra that what S.A. did to her was nothing compared to an actual sexual assault, equating it to an accidental bump into her, and asking Plaintiff Nagra why she was still complaining about it a year later.

71.    In her initial interview, Defendant informed Plaintiff Nagra that she – quite cruelly – would be responsible for determining what she "think[s] [S.A.'s]consequence should be."

72.    Despite being asked this wholly inappropriate question by a senior, male investigating officer, Plaintiff Nagra responded that "[S.A.] shouldn't be allowed to work with female Explorers." *Id.*, at 23.

73.    There was no apology or accountability whatsoever from Plaintiff Nagra's supervisors; instead, Officer Singleton, the individual conducting the initial interview, merely handed her "information on APD Peer Support and Physic [*sic*] Services and advised her if she needs to talk to someone don't hesitate to contact someone."

74.    After leaving Plaintiff Nagra in a vulnerable and victimized position for reporting this sexual assault, Officer Singleton interviewed S.A. and informed him in no uncertain terms that "because he touched [an] Explorers breast, **which is inappropriate**, there has to be a consequence."

75.    However, no actual discipline was ever effectuated.

76.     Specifically, S.A. was permitted to "c[o]me to every single week of Academy scenarios[]" and continue to search females – the exact time of situation in which S.A. had sexually assaulted Plaintiff Nagra and would, as a result of Defendant's inaction, allow him to later sexually assault Plaintiff Mirceska in March 2019.

77.     Although he did write a letter of apology, Defendant did not even ask or require him to do so, as he himself confirmed that he did "on his own volition."

78.     Defendant then later handed the letter to Plaintiff Nagra in an isolated office, forcing her to open and read it on the spot and then, upon information and belief, return it.

79.     The letter of apology was never even added to any formal disciplinary or employment file and Defendant has refused to produce a copy of it.

80.     Defendant made this decision despite being faced with a mountain of evidence unequivocally indicating that S.A. knew he was not supposed to engage in such behavior and that doing so could constitute sexual assault.

81.     Specifically, in an Inter-Post Memorandum given to Defendant the same night of the incident, Explorer Jacob Lempert informed Officer Singleton that two other males in the Post, Sgt. Alvarez and Agent Weide, "**told [S.A.] he should not touch females in the upper chest when searching them as it is inappropriate.  [S.A.] was told previously not to search females above the waistline before the incident occurred with [Nagra]**."

82.     It is undisputed that S.A. inappropriately touched Plaintiff Nagra and that he knew, at the time of the incident, that doing so constituted a sexual assault.

83.     Although SOP 8.5 lays out an extensive series of progressive discipline from "Verbal Reprimand" to "Dismissal," S.A. received no such "discipline."

84.     Defendant did not even enforce basic SOPs during the course of the investigation, further demonstrating its discriminatory intent.  Specifically, SOP 8.8 states,

> Explorers committing any act involving criminal action will be subject to disciplinary action and criminal prosecution. The Explorer will be suspended from any activities in the post. The Explorer will turn in their uniform, building pass., and SOP until the investigation is completed.

85.     At no time did Officer Singleton or any other Defendant supervisor suspend S.A. pending the "investigation."

86.     Instead, after the fact, Officer Singleton had a casual conversation with S.A. in which he offered comfort and assurance to the male that he would not be demoted or terminated from the Post.

87.     Defendant did not even honor the one thing Plaintiff Nagra asked for during her interview, which was that S.A. no longer work with females.

88.     Specifically, both Officer Susan Baker and another one of S.A.'s victims, Ariana Mejia, corroborated that S.A. was never prohibited from searching female Explorers.

**b.     Plaintiff Nagra Endures Disparate Dress Code Enforcement and Corporal, Discriminatory Punishment**

89.     On a free day during a competition trip to Chandler, Arizona, Plaintiff Nagra wore black leggings.

90.     No SOP prohibits wearing leggings, especially when Explorers such as Plaintiff Nagra have free days.

91.     On January 19, 2019, Plaintiff Nagra, along with Plaintiff Rooney was forced to endure corporal punishment.

92.     Specifically, on that day, Officer Natasha Muturi forced Plaintiff Nagra and Plaintiff Rooney to engage in nearly ten minutes of non-stop exercises in a hot hotel parking lot.

93.     During the punishment, Officer Muturi repeatedly made references to Plaintiff Nagra's and Plaintiff Rooney's buttocks:

**4:03:** Officer Muturi:  Alright stop, stay in plank, get your butt down, butt down Nagra, Why are we out here?
Plaintiff Rooney: I don't know, ma'am.
**4:23:** Officer Muturi: get your butt down Rooney, this is your actual rest, cause we're not done, this is your resting position.
(Officer Muturi orders them to remain in a plank position)
Officer Muturi: You have no idea why we're out here?
Plaintiff Rooney: No

**8:42:** Officer Muturi: it's going to be documented as far as, again, today how this is being addressed it's going to be documented - "plank" - get your butt down.

94.    Not only was this corporal punishment not meted on any male Explorer in Chandler, but the fact also that it was done on a free day, in a hot, hotel parking lot in clear view of their colleagues and the public clearly demonstrates its discriminatory and retaliatory intent.

95.    After this Chandler incident, Officer Smick, with other Post supervisors and members present, clearly referenced this incident and disturbingly commented that, in clear reference to Plaintiff Nagra, "fat people" should not wear leggings and asked if anyone there could imagine him in a pair of leggings, all while sitting in his chair and rubbing his abdominal region.

96.    This was not the first time Officer Smick made references to his own size and stomach, telling Explorers, including female Explorers, "You all have heard me joke, yeah, twisted steel, the whole fat, outta shape donut-eating cop, my great big baby that I have … I'd love to get rid of my baby, but my baby likes me and I like my baby," after which a female Aurora Police Department Sergeant replied, "That's a little bit disturbing[.]"

97.    The fact that this male supervisor not only did not address the discrimination to which Plaintiff Nagra was subjected but further casually and cruelly remarked that "fat people" should not wear leggings only further demonstrates the utter indifference Defendant showed Plaintiff Nagra.

98.    In this same meeting, Officer Singleton also told those complaining of discrimination such as Plaintiff Nagra that they needed to "stay in [their] lane, so to say."

99.    In sum, the discrimination could not be clearer: Plaintiff Nagra, after being sexually assaulted by a repeat offender and subjected to differential dress code enforcement and then corporally punished for it, was discharged for allegedly wrongful conduct, the extent of which involved commenting on memes in a private text message conversation which were later posted by a non-plaintiff on a private, non-public Instagram page.

100.     At the same time, Plaintiff Nagra's male perpetrator received no substantive consequences whatsoever and later graduated with full preference points to become an Aurora Police Department officer should he choose to do so.

101.     And despite S.A., who fully admitted to sexually assaulting a female, being given a choice as to what his discipline should be and saying *twice* that he should be dismissed, Plaintiff Nagra, for engaging in far less serious conduct, was given no such choice in her discipline and was instead immediately dismissed and, later, terminated by an officer without the authority to do so and outside of Defendant's SOPs.

*Plaintiff Mirceska*

102.     Prior to her discriminatory termination, Plaintiff Mirceska was similarly nothing short of one of Explorer Post 2024's most accomplished and decorated officers in training.

**a.     Plaintiff Mirceska Was Undisputedly the Victim of Sexual Harassment and Discrimination**

103.     Explorer Post 2024 contains numerous Standard Operating Procedures both implicitly and explicitly prohibiting sexual harassment:

SOP 9.6     No Explorer will act or behave in such a manner that brings discredit upon themself, the post, or the police department.
SOP 9.26     **The Aurora Police Explorer Post 2024 will not tolerate incidents or circumstances of discrimination, harassment nor sexual harassment.** Harassment is conduct that involved an atmosphere of unwelcome working conditions that have the purpose or effect of unreasonable interfering with an individual's work performance or
creating an intimidating, hostile, or offensive work environment. Federal and state laws prohibit harassment based on age, race, disability, color, ethnic origin, religion or sexual orientation.
SOP 9.27     All incidents of discrimination, harassment and sexual harassment must be reported to the Post Advisor immediately. **Any Explorer perpetrating this type of conduct will be subject to dismissal from the post.**

(Emphases added.)

104.     Despite this crystal-clear guidance, in March 2019, S.A. sexually harassed a third female Explorer, Plaintiff Mirceska.

105.    Less than five months after he had engaged in nearly identical conduct with another female Explorer, Plaintiff Nagra, and another female Explorer, S.A., during a training exercise during a monthly Explorer meeting, had Plaintiff Mirceska lie down prone on her stomach and placed his bare hand under Plaintiff Mirceska's shirt and moved it up against the bare skin of her back to about her bra line, stopping only because Plaintiff Mirceska jumped up in shock and indicated he should not do that.

106.    Plaintiff Mirceska, no more than an hour after it occurred, immediately reported the incident to her supervisors, including male Advisor Eisaman and male supervisor Officer Singleton.

107.    Despite these multiple, similar reports, no follow-up was ever conducted within the program itself and a resulting sex crimes investigation – nine months after the fact – resulted  in an "unfounded" determination even though Plaintiff Mirceska repeatedly stated that she felt "violated" and numerous witnesses observed the act.

108.    Again, less than months earlier, S.A. sexually assaulted Plaintiff Nagra in nearly the exact same way, with his only consequence being to write a "private" apology letter, despite SOP 8.5 laying out an extensive series of progressive discipline from "Verbal Reprimand" to "Dismissal."

109.    Despite not even receiving a Verbal Reprimand for his first act of sexual harassment, after assaulting Plaintiff Mirceska, Defendant again turned a blind eye and issued no discipline whatsoever to S.A..

110.    Regarding Plaintiff Mirceska, S.A. was not even asked to write an apology letter (which, even when he previously did, in no way constituted "discipline,") and later graduated with full preference points.

111.    In sum, the discrimination could not be clearer: Plaintiff Mirceska, after being sexually assaulted by a repeat offender, was discharged for allegedly wrongful conduct while her perpetrator received no consequences and later graduated with full preference points to become an Aurora Police Department officer should he choose to do so.

112. And despite S.A., who fully admitted, regarding the prior incident with Plaintiff Nagra, to sexually assaulting a female, being given a choice as to what his discipline should be and saying *twice* that he should be dismissed, Plaintiff Mirceska, for engaging in far less serious conduct, was given no such choice in her discipline and was instead immediately dismissed.

## VI.  CLAIMS FOR RELIEF

### COUNT I – UNLAWFUL SEX DISCRIMINATION

(Discrimination and Harassment Based on Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.)

113. Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

114. Plaintiffs are "employees" as that term is defined at 42 U.S.C. § 2000e(f).

115. Defendant is an "employer" as that term is defined at 42 U.S.C. § 2000e(b).

116. Title VII prohibits discrimination based on sex.

117. Based on the above-described acts, practices and omissions, Defendant engaged in unlawful discrimination under Title VII based on Plaintiffs' sex (female).

118. Furthermore, Defendant's illegal actions against Plaintiffs were of a sexual nature and were aimed at Plaintiffs because of their sex, resulting in adverse impacts to the terms and conditions of Plaintiffs' employment and further subjecting Plaintiffs to harassment and a hostile work environment.

119. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiffs' positions would find Plaintiffs' work environment to be hostile or abusive.

120. At the time the above-described conduct occurred, and as a result of such conduct, Plaintiffs believed their work environment to be hostile or abusive.

121. As such, Defendant violated 42 U.S.C. § 2000e-2(a) and discriminated against Plaintiffs by not only subjecting them to sufficiently severe or pervasive harassment based on their sex but also failing to act and condoning or tolerating such harassment on the part of other

Explorers, and subjecting Plaintiffs to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline on Plaintiffs.

122.   The reasons that Defendant submits for imposing heightened and/or disproportionate discipline on Plaintiffs are false and pretext for unlawful discrimination.

123.   In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

124.   As a result of Defendant's above-described conduct, Plaintiffs have suffered loss of preference points, emotional pain and suffering, embarrassment, and inconvenience and they are entitled to general and special damages, and economic damages. Plaintiffs are also entitled to and seek their attorneys' fees and costs as permitted by law.

<u>**COUNT II – UNLAWFUL RETALIATION**</u>
(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.)

125.   Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

126.   Plaintiffs engaged in activity protected by Title VII when they repeatedly reported sexual harassment and discrimination they and other female Explorers faced while employed by Defendant.

127.   Defendant subjected Plaintiffs to less favorable terms, conditions and privileges of employment because they reported gender harassment to Defendant.

128.   Plaintiffs' informal and formal opposition and complaints regarding Defendant's illegal practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et seq*.

129.   Defendant unlawfully retaliated against Plaintiffs in the terms and conditions of their employment and subjected Plaintiffs to further harassment because they engaged in the above-described statutorily-protected activities.

130.   A causal connection exists between Plaintiffs' protected activities and Defendant's unlawful retaliation.

131.    Defendant refused to reinstate (without conditioning such reinstatement on immediate resignation) Plaintiffs because they engaged in the aforementioned protected activities.

132.    Defendant contemporaneously with, and/or immediately subsequent to, Plaintiffs' protected activities, subjected Plaintiffs to the intentional, cumulative, adverse employment actions.

133.    Defendant intentionally subjected Plaintiffs to intentional and unlawful Title VII retaliatory discrimination.

134.    This intentional, unlawful retaliation was created, perpetrated, and/or tolerated by the Defendant's officials and/or supervisors.

135.    In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

136.    As a result of Defendant's retaliatory conduct, Plaintiffs have suffered loss of preference points, emotional pain and suffering, embarrassment, and inconvenience and they are entitled to general and special damages, and economic damages. Plaintiffs are also entitled to and seek their attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

## COUNT III – UNLAWFUL SEX DISCRIMINATION
(Discrimination and Harassment Based on Gender in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq*.)

137.    Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

138.    Defendant subjected Plaintiffs to less favorable terms and conditions of employment based on their gender, including, but not limited to, by forcing them to work with or under (in the chain of command) their sexual harassers, imposing overly harsh, unjustified, and unreasonable discipline, never disciplining any of Plaintiffs' sexual harassers, subjecting Plaintiffs to sufficiently severe or pervasive sexual harassment by other Explorers and male, adult supervisors, condoning or tolerating such harassment and failing to act to protect Plaintiffs after

they reported the same, and retaliating against Plaintiffs and subjecting them to less favorable terms and conditions of employment.

139.   Plaintiffs registered complaints regarding the gender harassment and hostile work environment with the appropriate authorities at Defendant.

140.   Defendant's above-described conduct constituted discrimination based on Plaintiffs' gender (female) in violation of CADA.

141.   In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

142.   As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages, including lost benefits and preference points, emotional pain and suffering, embarrassment, and inconvenience and they are entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## COUNT IV – ADDING AND ABETTING UNLAWFUL SEX DISCRIMINATION
(Aiding & Abetting a Sexually Hostile Work Environment in Violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401, *et seq.*)

143.   Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

144.   Male, non-adult and adult Explorers engaged in acts defined by CADA to be a discriminatory or unfair employment practices, specifically, a sexually hostile work environment.

145.   Defendant, through its adult, male supervisors aided, abetted, incited, compelled, or coerced the male, non-adult and adult Explorers to engage in those acts by failing to prevent or correct the sexually hostile work environment.

146.   Because Defendant, through its adult, male supervisors aided, abetted, incited, compelled, or coerced male, non-adult Explorers to engage in acts defined by CADA to be a discriminatory or unfair employment practices, Plaintiffs suffered damages.

## COUNT V – UNLAWFUL RETALIATION

(Retaliation in Violation of the Colorado Anti-Discrimination Act, C.R.S. §
24-34-301, *et seq*.)

147.    Plaintiffs hereby incorporate and restates all allegations contained in this Complaint as though fully incorporated herein.

148.    Plaintiffs participated in statutorily protected activity by opposing unlawful practices under CADA, including discrimination and harassment based on Plaintiffs' sex when they complained about rampant sexual harassment and discrimination they and other female Explorers faced.

149.    As a result of Plaintiffs' protected opposition to discrimination and harassment, Defendant retaliated against them by, for example, requiring Plaintiffs to work with or be supervised by their sexual harassers, imposing overly harsh, unjustified, and unreasonable discipline, never disciplining any of Plaintiffs' sexual harassers, subjecting Plaintiffs to sufficiently severe or pervasive sexual harassment by other Explorers and male, adult supervisors, condoning or tolerating such harassment and failing to act to protect Plaintiffs after they reported the same, and retaliating against Plaintiffs and subjecting them to less favorable terms and conditions of employment.

150.    In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

151.    As a direct and proximate result of Defendant's above-described conduct, Plaintiffs have suffered damages, including lost benefits and preference points, emotional pain and suffering, embarrassment, and inconvenience, and they are entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## VII.  DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury of all issues triable of right to a jury and raised by the pleadings in this action.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment in their favor and against Defendant on all claims for relief asserted in this Complaint and Jury Demand and, in addition, for the following relief:

(1)     To enter a judgment in favor of Plaintiffs and against Defendant, finding the acts of the Defendant constitute sex discrimination in willful violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*., as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq*.

(2)     To enter a judgment in favor of Plaintiffs and against Defendant, finding the acts of the Defendant constitute intentional retaliation, in willful violation of Title VII and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq*.

(3)     To award Plaintiffs all monetary damages to which they are entitled, pursuant to a willful violation of Title VII and CADA.

(4)     To award Plaintiffs compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which they are entitled, pursuant to Title VII and CADA.

(5)     To award Plaintiffs punitive damages, pursuant to Title VII and CADA.

(6)     To award Plaintiffs reinstatement and/or full preference points, pursuant to Title VII and CADA.

(7)     To award Plaintiffs attorney fees and costs, pursuant to Title VII and CADA.

(8)     To award Plaintiffs pre-judgment and post-judgment interest at the appropriate rate provided by law.

(9)     To award Plaintiffs any and all other legal and equitable relief, to which Plaintiffs are entitled pursuant to any law, that this Court deems just, equitable, and proper.

Dated: October 23, 2023

Respectfully submitted,

*/s/ Elliot A. Singer*
Elliot A. Singer (#47490)
CONDUIT LAW, LLC
2590 Welton St.
Suite 200
Denver, CO 80218
Phone: (720) 432-7032
Facsimile: (720) 310-2224
Email: elliot@conduit.law
*Counsel for Plaintiffs*

Plaintiff Rooney's Address:
505 Toledo St.
Aurora, CO 80011

Plaintiff Nagra's Address:
4779 Tempe St.
Aurora, CO 80015

Plaintiff Mirceska's Address:
3188 S. Granby Way
Aurora, CO 80014